Matthias, J.
The single question raised in this action is whether a corporation organized for the purpose of engaging in engineering prior to August 6, 1943, may continue to engage in such practice.
Relator, the Attorney General, urges that respondent be ousted of its charter on the ground that corporations can no longer under Ohio law engage in the practice of engineering. He bases his argument on the fact that the Professional Engineering and Surveying Act of 1933 made engineering in Ohio a profession, and that under the Ohio law in existence since 1880 (now Section 1701.03 Revised Code) corporations cannot engage in any profession, and thus by the terms of the engineering act itself corporations are prohibited from engaging in engineering.
In view of our determination in this case, it is unnecessary for us to decide whether the General Assembly may by mere legislative declaration expand the time-honored category of the professions of law, medicine and the clergy to include therein any business or calling.
The determination of this case must rest on an interpretation of Section 1083-18, General Code, as originally enacted, and the amendment thereof in 1943.
Section 1083-18, General Code, as originally enacted in 1933, read as follows:
“A firm, or a copartnership, or an association may engage in the practice of professional engineering or surveying in this state, provided only such practice is carried on by professional engineers or surveyors, respectively, who are registered in this state. ’ ’
It may be urged that the General Assembly by specifically naming firms, copartnerships and associations as being permitted to practice engineering excluded corporations, and that *195 after 1933 corporations were prohibited from engaging in the practice of engineering.
An examination of such section shows no such prohibition, the prohibition arising, if at all, by implication.
Although it is true that a corporation takes its charter subject to the reserved power of the state, if such corporation is to be divested of its charter it must be done directly and clearly or by necessary implication. See 7 Fletcher Cyclopedia Corporations, 911, Section 3733.
Does such implication necessarily arise from the enumeration of firms, copartnerships and associations as being permitted to practice engineering and the failure to include corporations?
Although the word, “firm,” technically and legally does not include corporations, under common usage such term is used to refer to corporations. Here the General Assembly used the word, “firm,” in conjunction with what is ordinarily considered the usual other types of business entities, that is, copartnerships and associations, which leads to the conclusion that such'word might well have been used in its broad general sense' to include corporations. To what the General Assembly intended the word, “firm,” to relate is both uncertain and ambiguous so far as the section itself is concerned.
The uncertainty which such ambiguity created is clearly illustrated by the fact that from 1933 to 1943 the administrative officials charged with the incorporation of companies, supported by an opinion of the Attorney General, interpreted such section as permitting the incorporation of engineering companies.
This brings us to a consideration of the purpose and effect of the 1943 amendment.
Apparently in 1943, this ambiguity was brought to the attention of the General Assembly and also the fact that companies were still being incorporated for the practice of engineering. In order to correct the ambiguity raised by the use of the word, “firm,” in the 1933 act and at the same time to protect rights which had accrued under the administrative interpretation of such act. Section 1083-18, General Code, was amended so as to prohibit the future incorporation of engineer *196 ing companies and to recognize and validate the firms previously incorporated to that date. Section 1083-18, General Code, as amended in 1943, read as follows:
“A firm, or a copartnership, or an association may engage in the practice of professional engineering or surveying in this state, provided only such practice is carried on by professional engineers or surveyors, respectively, who are registered in this state.
“No corporation shall hereafter be granted a charter to engage in the practice of professional engineering or surveying, nor shall any corporation hereafter formed use or assume a name involving the word ‘engineer’ or ‘engineering’ or any modification or derivative of such term except a nonprofit membership corporation.” (Emphasis added.)
Thus the General Assembly in 1943 passed what amounted to a curative act, validating previously incorporated engineering companies.
There is no question that the General Assembly can enact such retroactive curative legislation so long as it does not interfere with contract rights. See 50 American Jurisprudence, 503, Statutes, Section 481; 13 American Jurisprudence, 175, Corporations, Section 21. In Burgett v. Norris, Treas., 25 Ohio St., 308, 317, Gilmore, J., stated:
“The Legislature, in which is vested all legislative power not prohibited by the Constitution, had the power, therefore, to pass a curative statute retrospective in its nature, which, like this, does not impair contracts or disturb absolute vested rights already existing, but which is intended to further the cause of right and justice by curing defects in the proceedings before the county commissioners * * *. There can be no doubt as to the intention of the Legislature in passing this statute. * * * In the exercise of its plenary powers, the Legislature, in cases of this nature, could cure and render valid, by remedial retrospective statutes, that which it could have authorized in the first instance by proper enactments.”
It is obvious that the 1943 amendment protected and preserved rights; it in no way interfered with or impaired accrued rights, and, using the language of Gilmore, J., there can be no doubt of the intention of the General Assembly when it pro *197 vided that hereafter corporations can not be organized for the practice of engineering. Clearly, it was its intent to preserve and validate existing engineering corporations.
Thus by the enactment of the 1943 amendment of Section 1083-18, General Code, the General Assembly validated all previously incorporated engineering companies organized prior to 1943, irrespective of any alleged prohibition of the 1933 engineering act, and it follows, therefore, that such corporations may still legally engage in practice.
Finally, relator urges that* if we should determine that the 1943 amendment, supra, does in fact authorize the continuance of engineering practice by corporations organized prior to 1943, then such amendment constitutes an unconstitutional discrimination in favor of corporations existing prior to 1943 and consequently violates Section 1 of Article XIV, Amendments, of the United States Constitution. We find such argument to be without merit. The relator cites to us in his brief authority found in 12 American Jurisprudence, 138, Section 474, relative to the Fourteenth Amendment, as follows:
tt t* # # forbids the Legislature to select any person, natural or artificial, and impose discriminations not cast upon others similarly situated * * V ” (Emphasis added.)
It would seem clear enough that the many engineering corporations which existed for years prior to the legislation, which have carried on legitimate businesses, which have invested large sums of money in property and. equipment, and which have entered into important contracts, etc., much of which would be jeopardized by declaring the conduct of such businesses now illegal, equitably stand on a far different footing from persons who prospectively would seek to form a corporation for the purpose of practicing engineering.
Pertinent here is 12 American Jurisprudence, 270, Section 574, which provides in part:
<<* * • j)ue proeess 0f jaw is denied when any particular person of a class or of the community is singled out for the imposition of restraint or burdens not imposed upon, and not to be borne by, all of the class or of the community at large, unless the imposition or restraint is based upon existing distinctions that differentiate the particular individuals of the *198 class to be affected from the body of the community.” (Emphasis added.)
It was eminently reasonable for the General Assembly to consider the positions of existing engineering corporations and to allow such corporations in existence prior to August 6, 1943, to continue in practice.
The demurrer to the petition is sustained and the writ is denied.

Writ denied.

Weygandt, C. J., Zimmerman, Taft, Bell, Herbert and Peck, JJ., concur.